IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*v.*<br>RYAN BRANDT<br>AND<br>ELTON JACKSON | Criminal Case No.<br>3:23-CR-018-LMM |

**GOVERNMENT'S RESPONSE TO EMERGENCY MOTION TO STAY TRANSFER TO IRWIN COUNTY DETENTION CENTER**

The United States of America, by and through its attorneys, Theodore S. Hertzberg, the United States Attorney for the Northern District of Georgia, Noah R. Schechtman, Assistant United States Attorney, David L. Jaffe, Chief of the Department of Justice Violent Crime and Racketeering Section, and Lisa M. Thelwell, Trial Attorney, respond to defendants Ryan Brandt and Elton Jackson's motions to stay their transfers to Irwin County Detention Center ("ICDC").

## 1. PROCEDURAL HISTORY

Defendants Brandt and Jackson—leaders of criminal enterprise known as Sex, Money, Murder—were charged with conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act and conspiracy to possess with the intent to distribute controlled substances. (Doc. 1). After a superseding indictment was filed, Jackson and Brandt pleaded guilty. (Docs. 809, 850). Sentencing hearings are set for November and December. (Docs. 810, 851).

Last week, Brandt filed an emergency motion to stay his anticipated transfer from the Robert A. Deyton Detention Facility ("RADDF") to ICDC. (Doc. 877). Jackson filed a nearly identical motion. (Doc. 878).

## 2. ARGUMENT AND CITATION TO AUTHORITY

As explained in Defendants' motion, the United States Marshal Service ("USMS") contract with RADDF will cease at the end of October 2026. As a result, the USMS is transferring the NDGA detainees currently held at RADDF to other facilities, including ICDC. Defendants argue that a transfer to ICDC would violate their Fifth and Sixth Amendment rights. They do not substantially rely on any harm unique to him amongst NDGA detainees currently housed at RADDF. Instead, the gravamen of their argument is that it is unlawful for the USMS to transfer *any* NDGA detainee from RADDF to ICDC.[1] These arguments also seem to preclude the detention of any future NDGA defendant at ICDC.

Defendants are correct that ICDC is further from the federal courthouse in Atlanta and their attorney's office, that this will necessarily increase travel time, and that it may create other new logistical hurdles. The government acknowledges these valid concerns and does not seek to minimize the impact that this transfer may have on Defendants. But though it may be more convenient to Defendants if they remained housed at RADDF — and though the Court might agree that the USMS's decision is bad policy — Defendants fail to show a violation of their constitutional rights or otherwise justify the

---

[1] Nearly identical motions have been filed in several other cases, and the Federal Defender Program has publicly stated a willingness to file similar motions on behalf of all clients at RADDF. *See* Reed Williams, *Plan to move detainees to South Georgia illogical, defense attorneys argue*, Atl. J. Const., Sep. 28, 2026, https://www.ajc.com/news/2026/09/plan-to-move-detainees-to-south-georgia-illogical-defense-attorneys-argue/ ("Natasha Perdew Silas, executive director of the Federal Defender Program, said her staff will file such motions on behalf of any of their clients who object to being moved to Ocilla, which she expects to be dozens.").

extraordinary relief they seek: injunctive relief dictating where the USMS may fulfill its statutory duties of housing pretrial detainees.[2]

**A. Decisions over detention are properly vested in the USMS.**

Defendants are pretrial detainees whose criminal matters are still pending in the Northern District of Georgia and thus falls under the custody and control of the USMS. *See* 18 U.S.C. § 4086. Under that statute, "a pretrial detainee's place of detention falls within the USMS's discretion." *United States v. Olson*, No. 22-CR-162 (DSD/DLM), 2025 WL 2715499, at *2 (D. Minn. Sept. 24, 2025).

And as Chief Judge May has noted, "[t]he USMS is generally afforded deference in its placement of pretrial detainees." *United States vs. Erico Varner*, No. 1:17-cr-00265-LMM-CMS-1, Doc. 66 at 6 (N.D. Ga. Sept. 23, 2026) (citing *Cometa v. Doe*, No. 5:18-cv-233, 2018 WL 11247169, at *1-2 (M.D. Fla. Aug. 15, 2018)); *see also United States v. Boyce*, No. 21-cr-30003-DWD, 2023 WL 137823, at *1 (S.D. Ill. Jan. 9, 2023) ("Courts have recognized that these statutes . . . provide the USMS with broad authority to determine where to house its prisoners."); *Saunders v. United States*, 502 F. Supp. 2d 493, 496 (E.D. Va. 2007) ("This open-ended authority recognizes the Marshals Service's need to weigh concerns of expense, administration, payment, access to the premises, and the veritable plethora of factors."). Defendants' policy-based criticisms of the USMS's decision

---

[2] The USMS contract with RADDF will end on October 31, 2026. It is unclear whether Defendants seek an order commanding USMS to maintain its contract with RADDF or to contract with another unspecified detention facility — a reflection of the exceptional nature of Defendants' request that the Court wade into executive functions.

to end the contract with RADDF— justified or not — do not permit the Court to interfere with USMS's statutory role in the placement of pretrial detainees.[3]

**B. Defendants show no violation of their constitutional rights.**

To justify their extraordinary request that the Court interfere with the USMS's placement decisions, Defendants' primary complaint is that ICDC is farther away from Atlanta and travel will be more burdensome — both for the attorney traveling to visit ICDC and for Defendants traveling to court in Atlanta. Neither suffices to show a constitutional violation.

"When a Sixth Amendment claim is based on alleged inconvenience caused by the distance between a court and a pretrial detention facility, courts have required defendants to show that access to counsel was actually or constructively deprived, or that defendant was prejudiced, in order to sustain the claim." *United States v. Allick*, No. CRIM.A. 2011-020, 2012 WL 32630, at *2 (D.V.I. Jan. 5, 2012); *see also Aswegan v. Henry*, 981 F.2d 313, 314 (8th Cir. 1992) ("Although prisoners have a constitutional right of meaningful access to the[ir] counsel, prisoners do not have a right to any particular means of access, including unlimited telephone use.").

But "although the Irwin County Detention Center is further away, it is not so far that counsel could not have in-person meetings with [Defendant]." *Varner*, No. 1:17-cr-00265-LMM-CMS-1, Doc. 66 at 6; *see also United States v. Lucas*, 873

[3] Defendants also complains that a transfer to ICDC would be inconsistent with a 2023 DOJ memorandum responding to a draft OIG report, which expressed an aspirational goal that the USMS "makes every effort" to house detainees closer to courthouses. Even if true, an agency memorandum does not create actionable rights for a criminal defendant.

F.2d 1279, 1280–81 (9th Cir. 1989) (holding that pretrial detention in a facility 120 miles away from counsel did not constitute an actual or constructive denial of assistance of counsel because defendant and his attorney "were free to communicate by telephone" or his attorney "could easily endure the inconvenience of a two-hour drive"); *Allick*, 2012 WL 32630, at *5 (finding no violation of right to counsel when defendant, facing charges in the Virgin Islands, was detained in Puerto Rico); *Falcon v. U.S. Bureau of Prisons*, 852 F. Supp. 1413 (S.D. Ill. 1994), *aff'd.*, 52 F.3d 137 (7th Cir. 1995) (holding that although petitioner facing trial in Florida was housed in Illinois during pretrial period, no Sixth Amendment violation occurred where counsel could travel by plane to meet defendant and communicate with him by telephone); *United States v. Echeverri,* No. 91–cr–885, 1992 WL 81876, at *2 (E.D.N.Y. Mar. 31, 1992) (finding no violation of right to counsel when defendant was detained at facility 100 miles outside of Eastern District of New York because "the distance to the Otisville facility may inconvenience defense counsel, but it does not deprive defendant of his right to a reasonable opportunity to consult with counsel.").

Beyond the distance and travel time to ICDC, Defendants offers only speculation that detention at ICDC will interfere with the preparation of their defense or otherwise infringe their rights. Such speculation is insufficient to create an issue ripe for this Court to resolve, and their motions are thus premature. *See Varner*, No. 1:17-cr-00265-LMM-CMS-1, Doc. 66 at 6 (deeming request for injunctive relief premature where defendant "does not know what virtual visitation capabilities the Irwin County Detention Center has, nor has he made it clear why it would be difficult to review discovery over video or discuss

[defendant's] tactical decisions remotely"); *see also In re Jacks*, 642 F.3d 1323, 1332 (11th Cir. 2011) ("A claim is not ripe when it is based on speculative possibilities."). Should specific issues arise once Defendants are transferred to their new detention facility, and should the parties be unable to resolve those issues, Defendants will be able to seek assistance from the Court at that time.[4]

**3. CONCLUSION**

Defendants fail to show a violation of their constitutional rights or other basis for the extraordinary relief they seek. Their motions should be denied.

Respectfully submitted,

THEODORE S. HERTZBERG
United States Attorney

/S/ NOAH R. SCHECHTMAN
Assistant United States Attorney
Georgia Bar No. 937828
noah.schechtman@usdoj.gov

/S/ LISA M. THELWELL
Trial Attorney
Florida Bar No. 100809
lisa.thelwell@usdoj.gov

[4] As the Court may know, the USMS has committed to making VTC calls at ICDC available either the same or next day they are requested and allowing defendants to reserve one of thirteen private rooms to review discovery.